1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11 GYPSIE JONES,
                                    2:04-CV-2002-MCE-KJM
12          Plaintiff,

13    v.                            MEMORANDUM AND ORDER

14 DOLLAR TREE STORES, INC., dba
   DOLLAR TREE #2041,
15
            Defendant.
16
                        ----oo0oo----
17

18     Plaintiff Gypsie Jones ("Plaintiff") filed the instant

19 action against Defendant Dollar Tree Stores, Inc. ("Defendant")

20 alleging that Dollar Tree Store #2041, located at 3615 Northgate

21 Boulevard, Sacramento, California ("Store #2041"), is in

22 violation of California's Unruh Civil Rights Act ("Unruh Act"),

23 Cal. Civil Code §§ 51 et seq. and the Americans with Disabilities

24 Act ("ADA"), 42 U.S.C. § 12181 et seq.  She seeks damages

25 pursuant to the Unruh Act and injunctive relief pursuant to the

26 ADA.

27 ///

28 ///

                                1

The case is now before the Court on Defendant's Motion for Summary Judgment.[1]  For the reasons explained below, Defendant's motion is granted in part and denied in part.[2]

**BACKGROUND**

Plaintiff is a paraplegic who requires the use of a wheelchair for mobility.  Plaintiff visited Store #2041 twice in 2004 and claims that, during those visits, she encountered architectural barriers that made it difficult or impossible for her to have full and equal access to the goods and services provided by Defendant.  Plaintiff's first visit occurred in the Spring of 2004.  Shortly thereafter, Plaintiff sent a letter to the management of Store #2041 describing the barriers she encountered and requested that they be remedied.  Upon returning to Store #2041 in the summer of that same year, Plaintiff alleges the barriers she identified on her first visit had not been resolved.  Consequently, on September 27, 2004, Plaintiff filed the instant action.

///

///

---

[1] While Defendant does not specifically ask for partial summary judgement, the Court has discretion to adjudicate individual claims when it believes the criteria for summary adjudication are met.  <u>See</u> Fed. R. Civ. P. 56(d) (indicating that, on denying a motion for summary judgement on the whole case, the court may determine whether partial summary judgment is appropriate).

[2] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).

In her Complaint, Plaintiff identifies five potential access issues including (1) the lack of an International Symbol of Accessibility ("ISA") on the store's entrance door, (2) the lack of an accessible check stand, (3) the dimensions of the checkout counter, do not match the requirements prescribed by the ADA Accessibility Guidelines ("ADAAG"), (4) the lack of at least one 36 inch wide route through the store, and (5) the lack of an accessible route to the restroom.[3]  (Compl. at Ex. A.)

Approximately one year after filing her Complaint, Plaintiff sent her expert, Joe Card ("Card"), to Store #2041 to audit the facility.  Card was to confirm the ADA violations allegedly encountered by Plaintiff and to search for additional violations. Although Card's inspection report included more than thirty potential accessibility issues,[4] Plaintiff is pursuing only the following thirteen issues:

> (1)   The ISA sticker on the entrance door is mounted at the wrong height;
>
> (2)   The pressure required to open the entrance door exceeds the legal limit;
>
> (3)   The store's accessible checkstand does not provide a sign mounted above the checkstand that states "This check stand to be open at all times for customers with disabilities;"
>
> (4)   One of the store's exit doors is locked and blocked with merchandise;

---

[3] Plaintiff's Complaint contains fifteen additional alleged violations related to the parking lot and a public telephone located outside the store.  As indicated above, the parking lot is controlled by Defendant's landlord.  The same is true of the public telephone.  Because Plaintiff has already settled with Defendant's landlord, these fifteen claims are now moot.

[4] Plaintiff has chosen not to pursue the remainder of these potential claims for reasons not disclosed.  Accordingly, the Court considers those claims abandoned.

3

(5)   The automated teller machine (ATM) located at the accessible checkstand is not visible to users;

(6)   The signage on the women's restroom door is mounted at the wrong height;

(7)   The pressure required to open the door to the women's restroom exceeds the legal limit;

(8)   The women's restroom does not contain an ISA on the accessible stall door;

(9)   The women's restroom lavatory does not provide at least 29 inches of knee clearance as required by law;

(10)  The women's restroom's lavatory's drainpipes are not properly insulated;

(11)  The women's restroom's accessible stall has boxes in the required clear floor space;

(12)  The women's restroom's accessible stall has shelves mounted at a height which improperly protrudes into the head clearance space of a potential user; and

(13)  The toilet paper dispenser and a trash can in the women's restroom's accessible stall improperly protrude into the required clear floor space.[5]

See Card Decl. in Supp. Mot. Summ. J.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

---

[5]Plaintiff's Complaint also alleges the following two violations: (1) failure to maintain at least one 36 inch wide route through the store, and (2) improper dimensions with respect to the checkstand counter.  While Plaintiff has alleged these barriers in her Complaint, she makes no further mention of them in her filings with this Court.  Accordingly, the Court considers those claims abandoned.

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense.  <u>See</u> Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); <u>See</u> <u>also</u> <u>Allstate Ins. Co. v. Madan</u>, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); <u>France Stone Co., Inc. v. Charter Township of Monroe</u>, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment.  <u>See</u> Fed. R. Civ. P. 56(a), 56(c); <u>Mora v. ChemTronics</u>, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323(quoting Rule 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-87 (1986); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968).

1    In attempting to establish the existence of this factual

2    dispute, the opposing party must tender evidence of specific

3    facts in the form of affidavits, and/or admissible discovery

4    material, in support of its contention that the dispute exists.

5    Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that

6    the fact in contention is material, i.e., a fact that might

7    affect the outcome of the suit under the governing law, and that

8    the dispute is genuine, i.e., the evidence is such that a

9    reasonable jury could return a verdict for the nonmoving party.

10   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52

11   (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper

12   Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way,

13   "before the evidence is left to the jury, there is a preliminary

14   question for the judge, not whether there is literally no

15   evidence, but whether there is any upon which a jury could

16   properly proceed to find a verdict for the party producing it,

17   upon whom the onus of proof is imposed."  Anderson, 477 U.S. at

18   251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20

19   L.Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen the

20   moving party has carried its burden under Rule 56(c), its

21   opponent must do more that simply show that there is some

22   metaphysical doubt as to the material facts .... Where the record

23   taken as a whole could not lead a rational trier of fact to find

24   for the nonmoving party, there is no 'genuine issue for trial.'"

25   Matsushita, 475 U.S. at 586-87.

26   ///

27   ///

28   ///

6

In resolving a summary judgment motion, the evidence of the
opposing party is to be believed, and all reasonable inferences
that may be drawn from the facts placed before the court must be
drawn in favor of the opposing party.  <u>Anderson</u>, 477 U.S. at 255.
Nevertheless, inferences are not drawn out of the air, and it is
the opposing party's obligation to produce a factual predicate
from which the inference may be drawn.  <u>Richards v. Nielsen
Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),
<u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

The Americans with Disabilities Act, 42 U.S.C. §§ 12101 et
seq. mandates that places of public accommodation and commercial
facilities be accessible to persons with disabilities.  For
commercial facilities and places of public accommodation, this
mandate is encompassed within Title III of the ADA, 42 U.S.C. §§
12181 et seq. ("Title III").  Title III's provisions are
implemented through regulations promulgated by the Department of
Justice which include guidelines for new construction and
alterations.  <u>See</u> 42 U.S.C. § 12186(a); 28 C.F.R. Part 36
Appendix A.  These guidelines are known as the Americans with
Disabilities Act Access Guidelines or ADAAG.  In addition to
these federal enactments, California has promulgated similar
rules in its Building Code.  <u>See</u> Cal. Code of Regs., tit. 24
(2001).  Together these laws form the framework for assuring that
disabled persons have equal access and enjoyment of commercial
facilities.

It is Plaintiff's contention that Dollar Tree Stores, Inc. has violated the foregoing rules and regulations at Store #2041. Defendant disagrees and, through the present Motion, seeks to have Plaintiff's claims dismissed.

**1.   Standing**

The United States Constitution limits the jurisdiction of federal courts to the resolution of "cases" and "controversies." U.S. Const. Art. III § 2, cl. 1.  This limitation is given effect by the constitutional standing requirements, which ensure that the exercise of judicial power is restricted to litigants who can show that they have been adversely affected by the action which they seek to have the court adjudicate. Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 473 (1982).  To satisfy Article III's standing requirements, a plaintiff must show that: (1) she has suffered an "injury in fact" that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-181 (2000).

The injury in fact prong is generally considered the "principal limitation imposed by Article III." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F.Supp.2d 9, 14 (D.C. Cir. 2001) (citations omitted).

8

In order to determine whether a plaintiff has established the requisite injury in fact, courts look to the facts in existence at the time an action is filed. Friends of the Earth, Inc., 528 U.S. at 170.

In the context of ADA litigation, courts are split over whether a plaintiff can sue for access barriers never encountered or known about prior to filing suit. Some courts have held that to satisfy the injury in fact prong, an ADA plaintiff must either personally encounter the barrier complained of, or have reason to know of the barrier and be deterred from visiting a public accommodation because of that barrier at the time the complaint is filed. Martinez v. Longs Drug Stores, Inc., 2005 WL 2072013, *4 (E.D. Cal.); White v. Divine Investments, Inc., 2005 WL 2491543, *3 (E.D. Cal.). Other courts find that, so long as an ADA plaintiff encounters one access barrier prior to filing suit, the plaintiff has standing to sue for any other violations subsequently discovered. Steger v. Franco, 228 F.3d 889, 893-894 (8th Cir. 2000); Wilson v. Pier 1 Imports, Inc., 412 F.Supp.2d 1130, 1131-1136 (E.D. Cal.). For the reasons below, it is this Court's finding that Plaintiff lacks standing for certain of her claims because she cannot show a "concrete" or "particularized" injury.

The Ninth Circuit has clarified that in order to show a concrete or particularized injury, Plaintiff must show that she is affected in a personal and individual way. Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1137-38 (9th Cir. 2002).

///

///

Specifically, Plaintiff may seek redress only for those violations which she personally encountered, or which she knew of, or had reason to know of, and which deterred her from visiting Store #2041 at the time her Complaint was filed.  Id. at 1136-38.  Upon review of the thirteen claims currently pending, the Court finds that only five have any relationship to the violations alleged in Plaintiff's Complaint.  In particular, the Court concludes that Plaintiff's standing is limited to the following five claims: (1) the mounting height of the ISA on Store #2041's entrance door; (2) the lack of signage stating "this check stand to be open at all times for customers with disabilities" on the store's accessible checkstand; (3) alleged visibility problems with respect to an automated teller machine (ATM) located at the store's accessible checkstand; (4) the mounting height of signage on the women's restroom door; and (5) the pressure required to open the door to the women's restroom.

Plaintiff's remaining claims are not identified in Plaintiff's Complaint and were only identified upon Mr. Card's inspection of Store #2041 nearly a year after Plaintiff's Complaint was filed.[6]  Plaintiff did not personally encounter those barriers nor was she aware of them at the time she filed her Complaint. Under this Court's analysis, she lacks standing to pursue them.  Accordingly, those claims are dismissed.

---

[6]For example, Plaintiff's expert alleges that the pressure required to open Store #2041's entrance door exceeds the legal limit; however, there is nothing in Plaintiff's Complaint to indicate that Plaintiff encountered that barrier.  Similarly, Plaintiff's Complaint is devoid of any reference to accessibility issues with respect to the store's exit doors or to the six alleged violations found inside the women's restroom.

1

2.   **Entrance Door ISA**

2

3        Plaintiff alleges that Store #2041 is not in compliance with

4  either federal or state access laws in that the ISA signage at

5  the entrance of the store is improperly mounted.  In fact, Card's

report shows that the ISA sign is mounted approximately 29 inches

6  from its center point to the finished floor.  <u>See</u> Card Decl. in

7  Supp. Mot. Summ. J., p. 6.  Plaintiff contends that both the

8  ADAAG section 4.30.6 and CBC section 1117B.5.7 require the ISA

9  sign be mounted at a height of 60 inches from its center point to

10  the finish floor.  As support for her argument, Plaintiff points

11  to ADAAG section 4.1.2(7)(c) which provides as follows:

12
           "[e]lements and spaces of accessible facilities which
13         shall be identified by the International Symbol of
           Accessibility and which shall comply with 4.30.7 are:
14         (c) Accessible entrances when not all are accessible
           (inaccessible entrances shall have directional signage
15         to indicate the route to the nearest accessible
           entrance."
16

17  28 C.F.R. Part 36, App. A.  This section clearly requires that,

18  when not all entrances to a commercial facility are accessible,

19  those that are must be identified by an ISA.

20        Defendants contend that even if the entrance at issue is the

21  only handicap accessible entrance, there is no requirement under

22  either federal or state law that the ISA be mounted sixty inches

23  from the finish floor.  The Court disagrees.

24        ADAAG section 4.30.6 reads

25         "[w]here permanent identification is provided for rooms
           and spaces, signs shall be installed on the wall
26         adjacent to the latch outside of the door ...
           [m]ounting height shall be 60 inches (1524 mm) above
27         the finish floor to the center line of the sign."
    <u>Id.</u>  Precisely that same language is found in  California's
28

Building Code ("CBC") section 1117B.5.7.  <u>See</u> Cal. Code of Regs. tit. 24, § 1117B.5.7 (2001).  As is clear from a plain reading of the foregoing provisions, the ADAAG and the CBC expressly require that where permanent signage is provided, it must be mounted at 60 inches from its center to the finish floor.

While Defendant may be correct in asserting that there is no mandate under either federal or state law that this particular entrance factually requires the posting of an ISA, Defendant has failed to meet its burden of establishing either that the entrance at issue is the only accessible entrance or that the signage posted at the entrance is not permanent.

Assuming, as the Court must, that this entrance is not the only accessible entrance and that Defendant's ISA is a permanent sign, there is no question it must be mounted 60 inches above the finish floor.  It is undisputed that Store #2041's ISA is mounted at 29 inches, well below the minimum 60 inch requirement for permanent signs.  Consequently, summary adjudication on this claim is inappropriate and is, therefore, denied.

**3.  Accessible Check Stand**

Plaintiff also contends that Store #2041 is in violation of both the ADAAG and the CBC because it does not provide a sign mounted above the check stand stating "This check stand to be open at all times for customers with disabilities." California's building code section 1110B.1.3 states:

///

12

> "accessible checkstands ... shall be identified by a sign clearly visible to those in wheelchairs ... The sign shall display the international symbol of accessibility ... and shall state 'This checkstand to be open at all times for customers with disabilities.'"

Plaintiff's expert found that Store #2041's accessible check stand, although providing the required ISA, failed to display the above language.  Plaintiff does not dispute this finding.  Accordingly, Defendant's Motion for Summary Judgment on this claim is denied.

**4.   Accessible Check Stand ATM Screen**

Plaintiff alleges that Store #2041's ATM screen in the accessible check stand is not visible to the user in violation of the CBC.  CBC section 1117B.7.5 provides:

> LED, cathode ray, or other screen devices intended to be viewed by the user shall be positioned so they are readily visible to and usable by a person sitting in a wheelchair with approximate eye level of 45 inches (1143 mm), and shall comply with the following requirements:
>
> 3. **Horizontally mounted screen devices.**  If mounted at an angle between 60 degrees and 90 degrees tipped away from the viewer, the center line of screens and other screen devices shall be located a maximum of 34 inches (864 mm) above grade.

Contrary to Plaintiff's assertion, the Court finds the card reader in question fully compliant with CBC section 1117B.7.5.  First, the CBC merely requires that the card reader be "visible to and usable by a person sitting in a wheelchair."  See Cal. Code of Regs. tit. 24, § 1117B.5.7 (2001).

///

13

With respect to visibility, the card reader must be positioned at a height of "approximately 45 inches." Id.  It is undisputed that the card reader at issue is positioned at a height of 44 inches when attached to the check stand rendering it substantially in compliance with the CBC for purposes of visibility.  See Card Decl. in Supp. Mot. Summ. J., p. 9.

With respect to whether the card reader is "usable" by a wheelchair bound patron, the Court finds the card reader at issue is, in fact, usable as required by the CBC.  Specifically, CBC section 1117B.7.5, subsection 3, which governs horizontally mounted screen devices, requires the center line of horizontally "mounted" screen devices to be located at a maximum of 34 inches above grade.  The card reader at issue is not "mounted" to the check stand.  Indeed, Store #2041's card reader is readily removable from its position by wheelchair bound patrons as it is attached by velcro.  This mobility permits handicapped patrons to easily utilize the card reader as required by the CBC.

Here, the Court finds the flexibility offered by Defendant's card reader in compliance with the CBC because it is visible and useable by disabled patrons.  For the foregoing reasons, Defendant's Motion for Summary Judgment on this claim is granted.

**5.   Women's Restroom Signage**

CBC section 1115B.5 mandates that women's restroom facilities are identified by signage centered on the door and mounted at a height of 60 inches.  Cal. Code of Regs. tit. 24, §
1115B.5 (2001).

14

1    Similarly, the ADAAG 4.30.6 provides that signage designating

2    permanent rooms and spaces shall be installed on the wall

3    adjacent to the latch side of the door at a mounting height of

4    60" (1525 mm) above the finish floor to the centerline of the

5    sign.

6        Plaintiff contends that the symbol identifying Store #2041's

7    women's restroom is mounted at 59 3/4 inches rendering it

8    noncompliant with ADA accessibility requirements.  Through this

9    claim, Plaintiff is ultimately seeking a judgment from this Court

10   that interior signage posted 1/4" at variance with the strict

11   terms of the ADAAG entitles her to damages and injunctive relief.

12   The Court disagrees.

13       The ADA, by and through the ADAAG, mandates that places of

14   public accommodation and commercial facilities be accessible to

15   persons with disabilities, which includes dimensional

16   requirements for various elements of the accessible environment,

17   such as signage, water closets, grab bars, lavatories, and

18   placement of emergency alarm notification devices.  These

19   guidelines, however, also permit equivalent facilitation.  ADAAG

20   § 2.2.  Equivalent facilitation applies to all sections of the

21   ADAAG and generally permits alternative technologies or designs

22   to be used to create substantially equivalent or greater access

23   to or usability of facilities.  ADAAG § 2.2; see also 56 F.R.

24   35408, comments on "4.30 Signage" (pagination not available).

25   ///

26   ///

27   ///

28   ///

15

Pursuant to the doctrine of equivalent facilitation, employing alternatives which provide equal or greater access to disabled patrons does not violate the ADA merely by virtue of the fact those alternatives do not comply with the strict terms of the ADAAGs.  Access Now, Inc. v. Ambulatory Surgery Ctr. Group, Ltd., 2001 U.S. Dist. LEXIS 6660, 28-30 (D. Fla. 2001).

It has been noted that the reason for the 60" mounting height is to provide uniformity of sign location and consistency in Braille location for visually impaired persons.  See 56 F.R. 35408, comments on "4.30 Signage" (pagination not available) (stating that original recommendation of a range of 54" to 66" was discarded in favor of a fixed dimension of 60" because that height places the sign at a more comfortable reading distance for users of Braille and raised characters.)  In fact, the ADAAG Manual itself recognizes this purpose and recommends that "signs containing pictograms or other non-tactile information ... should be measured to the centerline of the raised/Braille portion so that it is not too low (or high)."  ADAAG Manual p. 106.

Given that the strictures of the 60" height requirement are subject to equivalent facilitation as set forth in the ADAAG section 2.2 and that a 1/4" variation provides at least equivalent access to Plaintiff, her claim must fail.

The Court finds that Store #2041's signage height provides Plaintiff with equivalent facilitation because the 59 3/4" height gives her at least equivalent access to the facilities and is therefore in compliance with the ADA pursuant to the ADAAG section 2.2.  Accordingly, Defendant's Motion for Summary Adjudication of this claim is granted.

16

1          **5.    Women's Restroom Door Pressure**

2

3          Plaintiff alleges that the door to the women's restroom

4    violates the ADA because it requires 12 pounds of pressure to

5    open rather than 5 pounds as required under the ADA.  Defendant

6    answers that its restroom facilities are not open to the public

7    and, consequently, the pounds of pressure required to open the

8    door does not pose a barrier to Plaintiff.

9          In <u>Louie v. Ideal Cleaners</u>, 1999 WL 1269191 (N.D. Cal.), the

10   district court was confronted with exactly the same issue.

11   There, defendants operated a dry cleaning business that provided

12   restroom facilities to employees, but not to the general public.

13   The court held that since the restroom facilities were not made

14   available to customers in general, they did not need to be made

15   available to disabled customers.   The <u>Louie</u> court's holding was

16   based, in part, on its interpretation of California Health &

17   Safety Code § 19955.  That section provides that "[w]hen sanitary

18   facilities are made available for the public, clients or

19   employees ... they shall be made available for the handicapped."

20   Cal. Health & Safety Code § 19955 (2006).

21          The language of the statute is capable of two different

22   interpretations.  Plaintiff interprets the statute to say that if

23   a business provides restroom facilities to <u>employees</u> but not the

24   general public, it nonetheless must provide those facilities to

25   disabled individuals, including disabled members of the general

26   public.

27   ///

28   ///

17

1    The <u>Louie</u> court correctly rejected this interpretation.  As
2  an equal access statute, Health & Safety Code section 19955 is
3  intended to ensure that a disabled individual is able to utilize
4  public accommodations to the same extent as would be possible if
5  the individual were not disabled.  <u>See</u> <u>Louie</u>, 1999 WL 1269191 at
6  *3; <u>see also</u> <u>Donald v. Café Royale, Inc.</u>, 218 Cal.App.3d 168,
7  182-183 (1990).  Consequently, the <u>Louie</u> plaintiff was not denied
8  equal access because no members of the public – disabled or not –
9  were permitted to use the dry cleaner's employee-only restroom.
10 <u>Louie</u>, 1999 WL 1269191 at *3.  The fact that section 19955
11 required the restroom to be made accessible to disabled employees
12 was irrelevant since the plaintiff was not an employee.  <u>Id.</u>

13   Plaintiff argues that the <u>Louie</u> court was incorrect, and
14 offers a 1971 committee analysis from the Assembly Committee on
15 Commerce and Public Utilities as evidence that her interpretation
16 is in fact what the Legislature intended.  (Opp. at 7-10, Ex.
17 A:3-4.)  The Court is not persuaded by Plaintiff's argument.  The
18 analysis proffered by Plaintiff involved legislation predating
19 the current version of section 19955.  The version of section
20 19955 now in effect was enacted over two years later by an
21 entirely different Legislature, a point Plaintiff freely
22 conceded.  Consequently, the Court agrees with <u>Louie</u> and holds
23 that section 19955 requires Defendant to provide accessible
24 restrooms for disabled customers only if restrooms are provided
25 for non-disabled customers as well.

26   Plaintiff next alleges that Store #2041's women's restroom
27 is, in fact, open to the public.
28 ///

18

1  Defendant, however, has steadfastly maintained that Store #2041's
2  restrooms have been closed to the public since long before
3  Plaintiff's first visit to the store.   The only evidence
4  supporting Plaintiff's contention is her declaration filed in
5  opposition to the present motion.   This declaration marks the
6  first time Plaintiff has alleged that she personally encountered
7  barriers inside the women's restroom.[7]

8      The Court views Plaintiff's later filed declaration with
9  skepticism.   As an initial matter, Plaintiff's Complaint makes no
10  reference to any barriers inside the women's restroom.   Rather,
11  she simply claims there was "no accessible route to the
12  restroom."  Compl. at Ex. A.   More importantly, Plaintiff sent a
13  letter to Defendant after her initial visit to Store #2041
14  wherein she complained "when I tried to use your rest room [sic]
15  a sign said it was out of order., [sic] so I hurriedly checked
16  out to find another facility."   Jones Decl. at Ex. A.   It is only
17  now, in opposition to Defendant's assertion that the restrooms
18  are for employee use only, that Plaintiff alleges she encountered
19  barriers therein.

20      As a general matter, the evidence presented by a party
21  opposing a summary judgement motion is to believed by the Court.
22  However, the opposing party must demonstrate that the evidence is
23  such that a reasonable jury could return a verdict for the
24  nonmoving party.

25

26      [7]At no point in her declaration does Plaintiff claim that
   she entered the women's restroom.   She merely claims that she
27  "encountered the following barriers on the inside of the Store."
   (Jones Decl. at 2:10-11).   She then lists the alleged barriers
28  identified by her expert.   Id.

1  Therefore, "before the evidence is left to the jury, there is a
2  preliminary question for the judge, not whether there is
3  literally no evidence, but whether there is any upon which a jury
4  could properly proceed to find a verdict for the party producing
5  it." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986)
6  (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L.Ed.
7  867 (1872)).

8       The Court finds that no credible evidence has been produced
9  by Plaintiff that she encountered barriers inside the women's
10 restrooms during her visit to Store #2041.  As a result,
11 Defendant's Motion for summary adjudication on this claim is
12 granted.
13 ///
14 ///
15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**CONCLUSION**

The Court grants Defendant's Motion for Summary Judgment on the following claims: 1) there is no accessible check stand; 2) the signage on the women's restroom door creates an accessibility barrier; and 3) the pressure required to open the women's restroom door creates an accessibility barrier.  The Court denies Defendant's Motion for Summary Judgment on the following claims: 1) the ISA signage is improperly mounted on the entrance door; and 2) there is no signage identifying the accessible checkstand.

IT IS SO ORDERED.

DATED: May 19, 2006

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE